IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAMMOTH RIGGING, LTD. AND LONE STAR RIGGING, LP | § § § § § | |
| Plaintiffs, | | |
| VS. | § § | Civil Action No. _____ |
| WASHINGTON CHAIN & SUPPLY, INC. | § § § § § | JURY TRIAL DEMANDED |
| Defendant. | | |

## I.   PRELIMINARY STATEMENT

1. This is an action for infringement of Plaintiffs' federally-registered and common law MAMMOTH trademarks used in connection with crane attachments and other rigging equipment and supplies under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and common law trademark rights.  Defendant, without authorization from Plaintiff, has used and is using the infringing mark of "Mammoth" and related branding logos and design in connection with the manufacture, distribution, marketing, advertising, promotion, offering for sale, and sale of Defendant's shackles and other rigging equipment and supplies.

2. Plaintiff seeks injunctive and monetary relief.

## II.   JURISDICTION

3. This court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4. This Court has specific personal jurisdiction over Defendant because it has purposefully availed itself to the privilege of conducting business in Texas.  By doing business in Texas, Defendant has consented to the jurisdiction of Texas and is therefore subject to jurisdiction in this state as set forth under Texas Civil Practices and Remedies Code § 17.042.  Defendant has and continues to offer, market, and promote its infringing goods, in-person, by through distributors, and via other means, including digital and internet marketing to consumers located in Texas and use and promote their infringing goods in Texas and elsewhere.

### III.   VENUE

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the actions or omissions giving rise to the claim occurred in this district.  In particular, but without limitation, Defendant, has marketed, sold, and continues to market and sell goods within the Southern District of Texas that infringe Plaintiffs' statutory and common law trademark rights.  In particular but without limitation, Defendant has marketed infringing products at events in Houston, Texas such as the annual Offshore Technology Conference, and sells infringing products to and through General Works Products, Inc. located in Houston, Texas.

### IV.   PARTIES

6. Plaintiff Mammoth Rigging, Ltd. is a limited partnership formed under the laws of Texas with a principal place of business located at 4175 W. Cardinal Drive, Beaumont, Texas 77705.

7. Plaintiff Lone Star Rigging, LP is a limited partnership formed under the laws of Texas with a principal place of business located at 4175 W. Cardinal Drive, Beaumont, Texas 77705.

8. Defendant Washington Cable & Supply, Inc. is a corporation that is incorporated in Delaware and has its principal place of business at 2901 Utha Ave S., Seattle, Washington 98134.

Defendant may be served with process through its registered agent, Unisearch, Inc., 1780 Barnes Blvd. SW, Tumwater, WA, 98512, or wherever the agent may be found.

## V.   FACTS

### A.  Plaintiffs' Family of MAMMOTH Marks

9. Plaintiffs are manufacturers and suppliers of lifting and rigging equipment and supplies, including slings, shackles, spreader bars, other "below-the-hook" items, and rigging equipment that are used to lift, hold, transport, secure, and stabilize loads in various operations, primarily in the industrial and maritime markets. Many of these products are sold, distributed, and rented under the company's MAMMOTH line of products.

10. Lone Star Rigging, LP began the development of the MAMMOTH line of products in 2013 with extensive research and development of a very high strength synthetic round sling using HMPE blended fiber and a 

*Figure 1*

customized jacket depicted in Figure 1. Marketing of the MAMMOTH brand began at least as early as April 2014 with inclusion of the MAMMOTH slings in Lone Star Rigging, LP's catalogue. The first branded MAMMOTH slings were manufactured and shipped in November 2014.

11. The MAMMOTH line of products began significant expansion in 2015, with the development of beam spreader bars and eventually other "below the hook" items such beam bars, man baskets, material baskets under the MAMMOTH RIGGING mark. Such items have been used in commerce since at least as early as August 2016.



*Figure 2*

12. The MAMMOTH product line significantly increased its sales and brand adoption by the customer base throughout 2016 and 2017. Additional products continued to be developed as well, including the MAMMOTH MULTIS Spreader Bars, which are a complete line of adjustable end-cap spreader bars.

13. On December 8, 2016, Lone Star Rigging, LP filed an application to register the MAMMOTH RIGGING design mark, depicted in Figure 3 with the United States Patent and Trademark Office (USPTO) for crane attachments.



Figure 3

14. The USPTO granted the application under Registration No. 5,348,958 on the Principal Register (hereinafter the "Registered Mark"). Attached as Exhibit 1 is a true and correct copy of the registration certificate for Plaintiff's United States Trademark Registration No. 5,348,958, which was issued by the United States Patent and Trademark Office on December 5, 2017.  The Registered Mark, and its good will, was assigned to Mammoth Rigging, Ltd., a wholly owned subsidiary of Lone Star Rigging, Ltd., on or about July 9, 2018.

15. As described above, Mammoth Rigging and Lone Star Rigging have used at least one or more of the MAMMOTH marks in interstate commerce since at least as early as August 2015. Throughout this time, the mark has been consistently used in a distinctive color blue, and the MAMMOTH products have been either painted in whole or in part this color blue, or manufactured out of materials in the same color.

16. Plaintiffs' marks are inherently distinctive, but in any event, and as a result of Plaintiffs' continuous advertising, promotion, marketing, and use of its MAMMOTH family of products, Plaintiffs have developed a strong relationships and goodwill with their customer base who have come to recognize and associate Plaintiffs' MAMMOTH products with Plaintiffs.

17. As a result of Plaintiffs' widespread, continuous, exclusive and prior use of the MAMMOTH marks to identify its goods and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights its family of MAMMOTH marks.

18. Lone Star Rigging and Mammoth Rigging have marketed their MAMMOTH brand of products through various methods and media, including internet, print advertisements, direct sales, retail, and industry trade shows. While attending one such trade show, it was discovered that Defendant was marketing a "Mammoth" shackle. See Figure 5.



*Figure 5*

19. Not only was Defendant using the MAMMOTH name, similar design elements (*e.g.* the image of a Mammoth, but Defendant was also using a similar color blue on its product and branding materials. Indeed, the offending product was being marketed just down the aisle from Lone Star Rigging's booth at the same show, as can be seen in in Figure 4 and Exhibit 2 attached hereto.



*Figure 4*

20. Defendant has also marketed its offending products at the Offshore Technology Conference in Houston, Texas. More recently, Plaintiffs learned that Defendant distributes its offending products through a Houston, Texas distributor as can be seen on the labeling of its "Mammoth Synthetic Rope Socket" in Figure 6 and Figure 7.



Figure 6



Figure 7

21. There is a high likelihood that the consuming public in Texas and throughout the United States will be confused unless Defendant is enjoined. As outlined above there is substantial similarity in the marks themselves, the goods, the channels of trade, the industries. Both Plaintiffs and Defendant use "Mammoth" as the primary element of their marks. Both Plaintiffs and Defendant use imagery of a mammoth with similar blue coloring. Plaintiffs and Defendant operate in similar industries and channels of commerce, even appearing at the same trade shows. The goods are similar in that they are all rigging and lifting devices. Indeed, shackles like that marketed by Defendant are regularly used with Plaintiffs' products as shown in some of above imagery. Plaintiff has also demonstrated a propensity to expand its line of MAMMOTH products to include various other related rigging and lifting products.

22. Defendant has used the "Mammoth" name, logo, and coloring for its shackles and rope sockets without Plaintiffs' authorization, and upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in its MAMMOTH marks.

23. Defendant's use of the "Mammoth" name and branding for its shackles and rope sockets creates a strong likelihood of consumer confusion.  As outlined above, there is substantial similarity in the marks themselves, their presentation, their channels of trade, the goods, and the industries in which they are used.

24. On August 6, 2018, Defendant was notified of Plaintiffs' objection to its use of infringing marks, and Plaintiffs requested that it immediately cease such use.  Defendant, however, continues to market the offending products.

25. Defendant's infringing acts as alleged herein are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the goods and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's goods originate from, are associated or affiliated with, or otherwise authorized by Plaintiffs.

26. Upon information and belief, Defendant's acts are willful and made with the deliberate intent to trade on the goodwill of Plaintiffs' trademarks, cause confusion and deception in the marketplace, and divert potential sales of Plaintiffs' rigging equipment and supplies to the Defendant.

27. Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

## VI.  COUNTS

### COUNT ONE

### Federal Trademark Infringement

28. Plaintiff repeats and realleges the foregoing allegations, as if fully set forth herein.

29. Mammoth Rigging, Ltd. is the owner of a valid and enforceable trademark, Registration No. 5,348,958, this is being infringed upon by Defendant.

30. Defendant's unauthorized use in commerce of the infringing marks as alleged herein is likely to cause confusion, mistake, or deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.  Defendant's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

31. Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the Registered Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

32. Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.  Plaintiff has no adequate remedy at law as the injury cannot be adequately compensated solely by money damages, and therefore Plaintiff seeks permanent injunctive relieve prohibiting Defendant's infringing conduct.

33. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the

action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT TWO

### Federal Unfair Competition and False Designation of Origin

34. Plaintiffs repeat and reallege the foregoing allegations, as if fully set forth herein.

35. Plaintiffs have developed a family of MAMMOTH marks that uniquely identifies Plaintiffs and their products. The consuming public recognizes Plaintiffs' marks in connection with Plaintiffs' sale of rigging and lifting products and have come to identify Plaintiffs as the source of such products. Plaintiffs have been using its MAMMOTH line of marks and developed the consumer identification prior to Defendant's use of any similar mark.

36. Defendant's unauthorized use in commerce of the infringing marks as alleged herein is likely to cause confusion, mistake, or deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Defendant is in some way affiliated with or sponsored by Plaintiffs.

37. Defendant's unauthorized use in commerce of the infringing marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

38. Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

39. Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.  Plaintiff has no adequate remedy at law as the injury cannot be adequately compensated solely by money damages, and therefore Plaintiffs seek permanent injunctive relieve prohibiting Defendant's infringing conduct.

41. Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT THREE

### Common Law Trademark Infringement

42. Plaintiffs repeat and reallege the foregoing allegations, as if fully set forth herein.

43. Plaintiffs are the exclusive owners and senior users of its MAMMOTH family of marks. These marks are valid and enforceable.  Defendant has, without authorization from Plaintiffs, used confusingly similar marks on similar goods in commerce.

44. Consumers are likely to be confused as to the source, sponsorship, or affiliation of the goods.  The primary element of the marks, the term "Mammoth," is identical.  Defendant further uses similar design and branding elements in terms of its mammoth logo and coloring.  The goods are very similar and serve similar purposes for rigging, securing, and transporting loads.  The parties operate in similar (if not identical) industries and channels of trade, both serving commercial, industrial, and maritime industries, and even appear at some of the same trade shows. Accordingly, consumers are likely to be confused, mistaken, or deceived as to the origin, source,

sponsorship, and affiliation, or association of the goods. Defendant's conduct therefore constitutes common law trademark infringement for which Plaintiffs seek relief.

45. Defendant has acted with actual, or in the alternative constructive, knowledge of Plaintiffs MAMMOTH marks. Defendant's conduct has caused harm to Plaintiffs for which Plaintiffs are entitled to recover their damages, Defendant's profits, and Plaintiffs' costs of this litigation. Pleading further, Defendant's acted willfully and with malice to trade upon the goodwill of Plaintiffs' marks, cause confusion, and deceive the public, and therefore Plaintiffs are entitled to recover exemplary damages and reasonable attorneys' fees.

46. Defendants' must be enjoined from their infringing conduct, or else, Plaintiffs will continue to suffer ongoing harm to its goodwill, exclusive rights, and irreparable injury to Plaintiffs' reputation. Plaintiffs have no control over the quality of Defendant's products and any deficiency will reflect poorly on Plaintiffs' products. Plaintiffs' have no adequate remedy at law for Defendants' ongoing infringement, which cannot be adequately compensated solely by money damages, and therefore Plaintiffs' seek permeant injunctive relief.

## VII. DEMAND FOR JURY TRIAL

47. Plaintiffs hereby demand a trial by jury on all claims that may be tried before a jury.

## VIII. PRAYER AND REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request judgment be entered in their favor and against Defendant, and grant Plaintiffs the relief as follows:

a. That judgment be entered against Defendant and in favor of Plaintiff in accordance with the above counts.

b. That Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114) by use of an infringing marks and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) for false designation of origin.

c.  That Defendant be permanently enjoined and that the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

   i) Manufacturing, distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute/provide, sell, market, advertise or promote lifting equipment and supplies bearing the mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Registered Mark and common law marks;

   ii) engaging in any activity that infringes Plaintiffs' rights in its Registered Mark and common law marks;

   iii) engaging in any activity constituting unfair competition with Plaintiffs;

   iv) making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that Defendant's lifting equipment and supplies are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiffs; or Plaintiffs' lifting equipment and supplies are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

   v) using or authorizing any third party to use in connection with any business, goods or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods or services with Plaintiffs or tend to do so;

   vi) registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the any other mark that infringes or is likely to be confused with Plaintiffs' Registered Mark and common law marks, or any goods or services of Plaintiffs, or Plaintiffs as their source; and

   vii) aiding, assisting, or abetting any other individual or entity in doing any acts prohibited.

d.  Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiffs or constitute or are connected with Plaintiffs' goods.

e.  Directing Defendant to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging,

    labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Registered Mark and common law marks, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's Registered Mark and common law marks, and to immediately remove them from public access and view.

f.   Directing that Defendant recall and deliver up for destruction or other disposition all goods, packaging, shopping bags, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's Registered Mark and common law marks.

g.   Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendant to file with the court and serve upon Plaintiffs' counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith.

h.   Awarding Plaintiffs an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

i.   Directing that Defendant account to and pay over to Plaintiffs all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

j.   Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

k.   Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

l.   Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

m.   Awarding such other and further relief as the Court deems just and proper.

**May 3, 2019**

          **Respectfully submitted.**

          **ORGAIN BELL & TUCKER, LLP**

By: _____/s/ J.S. Bullard_____

        John Seth Bullard
        State Bar No. 24040601
        Email: jb@obt.com
        Christopher A. McKinney
        State Bar No. 24044544
        Email: cam@obt.com
        Cullen Kiker
        State Bar No. 24055775
        Email: ckiker@obt.com
        470 Orleans Street
        P.O. Box 1751
        Beaumont, Texas 77701
        Phone: (409) 838-6412
        Fax: (409) 838-6959

ATTORNEYS FOR PLAINTIFFS, MAMMOTH RIGGING, LTD. AND LONE STAR RIGGING, LP